## VILLINES *v.* STATE.

### Opinion delivered December 9, 1912.

1. CRIMINAL LAW—SENTENCE—AMENDMENT.—Where a judgment convicting the defendant of manslaughter omitted to provide that defendant should pay the costs of his conviction, the omission may be cured by a *nunc pro tunc* amendment made at a subsequent term. (Page 473.)

2.  MOTIONS—NUNC PRO TUNC ORDERS—EFFECT.—A *nunc pro tunc* order relates back to the date as of which it should have been entered. (Page 476.)

3.  PARDON—EFFECT UPON COSTS.—A general pardon extends to all the judgment in which the public are interested, but does not affect the defendant's liability for costs, which may be enforced as a civil obligation. (Page 476.)

Appeal from Searcy Circuit Court; *Geo. W. Reed*, Judge; affirmed.

### STATEMENT BY THE COURT.

The defendant was convicted on the 6th day of October, 1911, at an adjourned term of the Searcy Circuit Court of the crime of voluntary manslaughter, and his punishment assessed by the jury at imprisonment in the penitentiary for a peried of two years. The judgment of the court, pronounced upon this verdict, sentenced the defendant to imprisonment in the penitentiary for that period of time, but it was silent upon the question of the costs of the conviction, and did not provide that these costs should be paid by the defendant, and that their payment should be enforced against him. Later, and at a subsequent term of the same court, a motion was filed by the prosecuting attorney for a *nunc pro tunc* order, amending the original judgment to provide that defendant should pay the costs of his conviction, and payment thereof should be enforced against him.

The defendant prayed an appeal from the judgment of the court sentencing him to the penitentiary, but before the appeal had been perfected the Governor of the State granted him a full perdon from this sentence. The petition for the *nunc pro tunc* order was heard and granted by the court after the pardon had been issued by the Governor. Evidence was offered at the hearing of the petition, the effect of which was to show that, upon pronouncing the sentence, the presiding judge made no order in regard to the costs; although, in explaining his action in amending the original judgment, he said it was his intention that a judgment for costs should be entered such as was usually entered in these cases.

*Guy L. Trimble*, for appellant.

1. There was no judgment rendered for costs. After the lapse of the term, the court has no authority to amend

the former judgment by *nunc pro tunc* entry except to cause the record to speak what it ought to have spoken, but did not speak.   93 Ark. 234-237.

If the court erred in failing to render judgment for costs, the proceeding by *nunc pro tunc* order does not lie to correct his judicial mistake.   100 Am. Dec. 366.

2.   The pardon granted by the Governor fully satisfied the judgment as of the date the pardon was granted, the judgment as to the defendant was fully executed.

An executed judgment can not be set aside and a new judgment imposing additional punishment entered at a subsequent term.   63 Kan. 57; 122 Mass. 317; 11 Am. & Eng. Ann. Cases, 299, note; 74 Ill. 20; 29 Fed. 775.

*Hal L. Norwood*, Attorney General, and *William H. Rector*, Assistant, for appellee; *John P. Streepey*, of counsel.

1.   This was an issue of fact tried before the court sitting as a jury.   Its finding as to the judgment actually rendered is conclusive.   68 Ark. 83, 87.

The entry of a judgment for costs in case of conviction is not a matter of judicial discretion resting with the court, nor a matter of judicial determination.   Under the statute the judgment for costs goes, whether mentioned by the court in its oral judgment or not.   Kirby's Digest, § 2446.   In this respect the case of *Railway* v. *Bratton*, 93 Ark. 234, is clearly distinguishable from this case.   See 100 Ark. 286.

2.   The Governor's pardon did not relieve defendant from payment of costs.   12 Ark. 123.

SMITH, J., (after stating the facts).   Upon overruling the motion for a new trial, the law prescribed the judgment that should be entered as follows: "In judgments against the defendant, a judgment for costs, in addition to the other punishments, shall be rendered, which shall be taxed by the clerk for the benefit of officers rendering services, and in case of failure by defendant to pay said costs they shall be paid by the county where the conviction is had."   (Kirby's Digest, § 2446).   No other judgment can be entered up by the court, as no discretion is allowed under the law, and it is immaterial what the judge might have said or omitted to say in pronouncing sentence.   The law imposes the burden of paying costs

as an incident to conviction, and the judgment is not properly entered of record until it is so provided. It is true here that this *nunc pro tunc* order was not made until after the expiration of the term at which the conviction was secured, but there is no objection to this being done. In the case of *Thurman* v. *State*, 54 Ark. 120, where the defendant had escaped, and was absent several years, and was recaptured and sentence formally pronounced by the court in which the conviction was had, Judge COCKRILL, speaking for the court, said: "The statute does not require that the sentence shall be pronounced and judgment entered at the same term at which a plea of guilty is entered; and the entering of the judgment at a subsequent term does not alter or conflict with anything done by the court at the previous term. There is, therefore, no lack of power in the court, and the judgment may be deferred until a subsequent term." The appellant insists that at the hearing of the petition for a *nunc pro tunc* order they made a showing, which was practically undisputed, that the presiding judge in pronouncing judgment made no order in regard to the costs, and that, in view of this omission, he could not, after the expiration of the term at which that judgment was pronounced, enlarge its scope by inserting a provision which it should have contained in the first instance; and in support of this contention quotes the following language used by Judge FRAUENTHAL in deciding the case of *St. Louis & N. A. Rd. Co.* v. *Bratton*, 93 Ark. 234.

"The entry in the record should correspond with the judgment which was actually pronounced, and the court has the power, and it is its duty, even at a subsequent term, to make such changes in the entry as to make it conform to the truth. But where the judgment expresses the entire judicial action taken at the time of its rendition, the court has no authority, after the expiration of the term, to enlarge or diminish it in matters of substance, or in any matter affecting the merits. Under the guise of an amendment, there is no authority to revise a judgment, or to correct a judicial mistake, or to adjudicate a matter which might have been considered at the time of the trial, or to grant an additional relief which was not in the contemplation of the court at the time the judgment was rendered. 'The authority of a court to amend its record by a

*nunc pro tunc* order is to make it speak the truth, but not to make it speak what it did not speak, but ought to have spoken;'" a part of the above language being quoted from the opinion by Judge COCKRILL in the case of *Hershy* v. *Baer*, 45 Ark. 240.

In the Bratton case, above cited, the administrator had recovered a judgment against the defendant railway company for killing his intestate, but the judgment entered did not recite that the sum recovered should be a lien against the railway and its equipment, and the plaintiff insisted that the judgment should be amended at the subsequent term of the court at which his motion was heard, to give him the benefit of the lien to which he was entitled upon the entry of his original judgment. The court made the order as prayed, and upon the appeal Judge FRAUENTHAL used the language above quoted, but the order and the action of the trial court in amending the judgment in the administrator's favor and awarding him a lien by a *nunc pro tunc* order was reversed, and it was further said in the same opinion: "In the case at bar, the plaintiff was entitled, upon a recovery of the damages for which he sued, to have a lien upon the property of defendant, and under certain circumstances of the case to have that lien mentioned in the judgment. But he was not entitled to have such lien under any and all circumstances of the case; he was not entitled to the lien in the event the suit had not not been brought within one year after the claim had accrued. He was therefore not entitled to the lien necessarily and as a matter of course. Section 6662 of Kirby's Digest provides that the lien mentioned in the preceding section shall not be effective unless suit is brought upon the claim within one year after said claim shall have accrued." Before, therefore, a judgment could have been declared for said lien, it must first be found that the suit was brought within the time specified in the above section. In order to declare and mention said lien in the judgment, it was necessary that the court itself should make a finding and then an adjudication; and if no such finding and adjudication was actually made by the court, the omission can not now be supplied by an amendment of the judgment. For such amendment did not speak the truth, but did speak what should have been done, but was not." This case is not like the Bratton case, for the reason that no finding is necessary to be made to

determine whether the defendant should be liable for the costs. The law fixes that liability as a consequence flowing necessarily and of course from his conviction.

In the case of In re *Jones*, 100 Ark. 231, which was a habeas corpus proceeding to take Eunice Jones from the custody of the county convict contractor because the judgment for the fine against him did not direct that, in default of its payment, the defendant be imprisoned until the fine and costs were paid, it being contended that he had never been committed to jail within the meaning of the law, because of that omission, the court said: "This contention is without merit. 'The law requires that where the punishment of an offense is by fine, the judgment shall direct that the defendant be imprisoned until the fine and costs are paid,' etc. (Kirby's Digest, § 2443). And such direction should have been included in said judgment against Jones, in default of payment of the fine levied. Its omission, however, did not render the judgment void, and was a clerical misprision which could have been corrected, even after the expiration of the term." See also the case of *Bobo* v. *State*, 40 Ark. 229.

It is also urged that the defendant had been pardoned at the time the *nunc pro tunc* order was made, and that there was no felony conviction out of which his obligation to pay costs could arise, and that the order was erroneous for that reason. But the *nunc pro tunc* order necessarily related back to the date as of which it should have been entered, and the pardon has the effect, and no other, that it would have had if the judgment with proper recitals had been entered at the time of the trial, and the pardon had been subsequently granted by the Governor. The effect of such a pardon is discussed in the case of *Edwards* v. *State*, 12 Ark. 123, where the defendant had been sentenced to the penitentiary for manslaughter, but had been granted an absolute pardon by the Governor. After an execution was issued to the sheriff for the costs of the prosecution, he applied to the circuit court to quash the execution, exhibiting his pardon and claiming that it released him from the payment of the costs. The court said: "Costs are neither fines nor forfeitures, nor are they imposed by way of punishment or as amercement at common law, but by way of sequence to every judgment, whether in

civil or criminal cases, as a matter of common justice to the parties complainant, witnesses, and officers of the court, although the judgment is in favor of the complainant alone. Costs then, partaking in no respect of the nature either of punishment or of guilt, are without the sphere of the legitimate legal operation of a pardon, however general in its terms."

In the case of Ex parte *Purcell*, 61 Ark. 17, which was a petition for a writ of habeas corpus where petitioner had been convicted of simple assault and fined $50, a pardon was granted, "absolving him from the payment of said sum of $50 of the said judgment and all the effect and consequences thereof." The clerk of the court issued execution for the collection of the costs, and defendant was placed in jail, and the chancellor, on hearing the petition, refused to order his release until the costs were discharged. Upon appeal the court held that the chancellor erred in refusing the relief prayed by the defendant, but in doing so quoted and approved the Edwards case above cited, and expressed these views upon the subject of civil liability for costs where pardon had been granted by the Governor: "It appears that one of the reasons why a general pardon can not exonerate the criminal from the payment of costs is that they go and belong to individuals, and not the public. Logically, then, a general pardon extends to all the judgment that the public has an interest in, but not to that part in which individuals only are interested. Upon reason, then, we think a general pardon exonerates from the payment of the fine proper, because that is a public concern, and for the same reason it takes away the criminal character of the judgment for the costs—the imprisonment part—leaving the civil obligation still resting upon the delinquent, to be enforced as other civil obligations."

Judgment affirmed.